# REAL ESTATE VALUATION IN LITIGATION

SECOND EDITION



J.D. Eaton, MAI, SRA

APPRAISAL INSTITUTE

CHAPTER 3

# *Legal Measurements of Just Compensation*

Due to conflicting case law and differing constitutional provisions in various jurisdictions, several different methods of computing just compensation have been promulgated. Although appraisers do not estimate just compensation, they must report their findings of market value and the difference in property value before and after a partial taking in a manner usable to those charged with the responsibility of computing just compensation.

The various condemning agencies have adopted computational rules, often in modified form, to be used by their appraisers in eminent domain valuation. Although the law recognizes that there are exceptions to the general rule that just compensation is equal to market value, the acquisition policies of condemning agencies seldom provide for such exceptions. Therefore, the appraisal forms and guidelines used by many condemning agencies must be modified to ensure that all parties understand that the appraiser's estimate reflects market value, which may or may not represent just compensation within the legal meaning of the term. Condemning agencies use policy statements such as "[u]nder established law the criterion for just compensation is the fair market value of the property at the time of the taking"[1] and "[t]he mathematical difference between the two values (market value "before" minus market value "after") is the just compensation,"[2] which illustrate their reluctance to acknowledge any measure of just compensation other than market value.

The specific rules for computing just compensation are almost as numerous as the states in the Union. Two general rules predominate; others are merely modifications developed to ensure compliance with applicable constitutional and

1. *Uniform Appraisal Standards for Federal Land Acquisitions* (Washington, D.C.: U.S. Government Printing Office, 1992), §A-2, 3-4.

2. Washington State Department of Transportation, *Right of Way Manual*, Chapter 4, Appendix 4-1, "Appraisal Report Guide," Part I, §A-3, p. I-1 (revised August 1991).

statutory provisions. The two general rules are the *before and after rule* (often referred to as the *federal rule*) and the *value of the take plus damages rule* (or the *state rule*).

To understand these rules one must first understand why the different rules were established. The sovereign cannot take private property for public use without the payment of just compensation. Some states have interpreted their constitutions to mean that just compensation must be paid in cash, while others have concluded that just compensation may be paid in a form other than cash, specifically in the form of special benefits bestowed on the remainder property in a partial acquisition. (See Chapter 15 for a discussion of general and special benefits.) In these latter jurisdictions, the special benefits may be offset against the value of the land taken, thereby reducing the amount of cash due the owner (sometimes to zero). This procedure would not meet the constitutional mandate in jurisdictions where compensation for the taking must be in cash. It is for this reason that two general rules have been established. The difference between the rules is generally significant only in partial taking cases in which the remainder property receives a special benefit.

## FEDERAL RULE

The federal (before and after) rule is somewhat of a misnomer. This rule is applicable in federal condemnation cases, but it is also applicable in a number of state jurisdictions. In its simplest form, the federal rule is: value before taking minus value after taking equals just compensation. Graphically, this would be shown as:

| | |
|---|---|
| Value of property before taking | $________ |
| Value of remainder property after taking | –________ |
| Difference (just compensation) | $________ |

Under the federal rule, no further breakdown is required for trial purposes. However, the Federal Uniform Relocation Assistance and Real Property Acquisition Policy Act of 1970[3] requires the condemnor to furnish the property owner with a written statement summarizing how the figure offered as just compensation was reached. "Where appropriate, damages for the land acquired and consequential damages to the remaining land not taken should be shown separately."[4] The provisions of this act apply not only to federal land acquisitions, but also to acquisitions made by the states and their various subdivisions if federal matching funds are involved in either the land acquisition or construction of the public improvement. Also, it should be noted that the Internal Revenue Service treats the amount paid for the taking differently than the amount paid for damages to the remainder for federal income tax purposes.[5] For these reasons, it is often necessary for the appraiser to present a detailed breakdown of the value estimates in the appraisal report.

3. P.L. 91-646.
4. Ibid., Title III, §301(3).
5. *Nichols' The Law of Eminent Domain*, rev. 3d ed. (New York: Mathew Bender Co., Inc., 1991), vol. 7A, §10.04[3] n.11.

## AN EXAMPLE

For purposes of illustration, consider a single property valued under the two different premises. Figure 3.1 shows a single-family property on a site measuring 100 feet by 300 feet, or 30,000 square feet. The site is improved with a 980-sq.-ft., single-family dwelling with an attached 280-sq.-ft. garage and miscellaneous on-site improvements such as trees, landscaping, and a driveway. The site has very poor surface drainage and is zoned for a single-family dwelling with a minimum lot size of 25,000 square feet and a minimum front yard setback of 25 feet.

**FIGURE 3.1 PLOT PLAN—PARTIAL TAKING**




| | |
|---|---|
| Area before taking | 30,000 sq. ft. |
| Area after taking | 29,000 sq. ft. |
| Area of taking | 1,000 sq. ft. |

The estimated market value of the property before any acquisition is $47,500, which can be broken down as follows for analytic purposes:

| | |
|---|---|
| Site (30,000 sq. ft. @ $0.50/sq. ft.) | $15,000 |
| Dwelling | 28,800 |
| Garage | 1,200 |
| On-site improvements | 2,500 |
| Total | $47,500 |

### PREMISE 1

Assume the local municipality will acquire the westerly 10 feet of the site for a road-widening project. Within the area to be taken are two trees and a portion of

the driveway. The acquisition will create a nonconforming use because the dwelling and garage will not meet the minimum required front yard setback.

Market analysis indicates that dwellings and garages that do not meet the setback requirement sell for 20% less than comparable, conforming dwellings. The contributory value of the on-site improvements remaining after the taking is estimated at $2,000. The property value before and after the taking under Premise 1 is tabulated in Table 3.1. From the information in Table 3.1, the appraiser draws the following conclusion:

| | |
|---|---|
| Value of property before taking | $ 47,500 |
| Value of remainder property after taking | -40,500 |
| Difference | $ 7,000 |

## PREMISE 2

Consider the same property described above. Assume that, as part of the road-widening project, the municipality will install storm sewers, which will eliminate the surface drainage problems on the property. Market investigation and analysis indicates that sites with no drainage problems sell for $0.75 per square foot, as compared to $0.50 per square foot for sites with drainage problems. The property's value before and after the taking under this premise is calcuated in Table 3.2.

Using the information in Table 3.2, the appraiser's conclusion is as follows:

| | |
|---|---|
| Value of property before taking | $ 47,500 |
| Value of remainder property after taking | - 47,750 |
| Difference (just compensation) | $ 0 |

The difference between the before value and the after value (i.e., just compensation) cannot, of course, be less than zero. The summary of conclusions shown in Tables 3.1 and 3.2 is typical of the type of presentation required by condemnors using the before and after rule.[6] This format satisfies the reporting requirements of condemnors and helps them comply with the Federal Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970. It should be noted that the phrase, "Accounting tabulation not indicative of appraisal method employed," is printed on the form. This notice is imperative to ensure that the purpose of the summary is not misconstrued. On cross-examination, lawyers tend to dwell on questions such as why an appraiser estimated the contributory value of a tree at $250 instead of $300.

It is advisable that the appraiser include, in the limiting conditions section of the appraisal report, a statement such as the following:

> Where the value of the various components of the property are shown separately, the value of each is segregated only as an aid to better estimating the value of the whole; the independent value of the various components may, or may not, be the market value of the component.

6. Washington State Department of Transportation Form 261-016.

**TABLE 3.1 SUMMARY OF CONCLUSIONS**

| | | | | | |
|---|---|---|---|---|---|
| (Accounting tabulation not indicative of appraisal method employed.) | | | | | |
| Indicated value before acquisition: | | | | | |
| Highest and best use: residential | | | | | |
| **Land Area** | | **Unit Value** | | | |
| 30,000 sq. ft. | | $0.50 | $15,000 | | |
| Total area 30,000 sq. ft. | | Total land | | $15,000 | |
| Improvements | | | | | |
| **Type** | **Size** | **Unit Value** | | | |
| Dwelling | 980 sq. ft. | $ 29.39 | $28,800 | | |
| Garage | 280 sq. ft. | $ 4.29 | 1,200 | | |
| On-site | | Lump sum | $ 2,500 | | |
| Total improvements | | | | 32,500 | |
| Total indicated value | | | | | $47,500 |
| Indicated value of remainder: | | | | | |
| Highest and best use: residential | | | | | |
| **Land Area** | | **Unit Value** | | | |
| 29,000 sq. ft. | | $0.50 | $14,500 | | |
| Total area 29,000 sq. ft. | | Total land | | $14,500 | |
| Improvements | | | | | |
| **Type** | **Size** | **Unit Value** | | | |
| Dwelling | 980 sq. ft. | $23.51 | $23,040 | | |
| Garage | 280 sq. ft. | $ 3.43 | 960 | | |
| On-site | | Lump sum | 2,000 | | |
| Total improvements | | | | 26,000 | |
| Total indicated value | | | | | 40,500 |
| Breakdown of acquisition: | | | | | |
| **Land Area** | | **Unit Value** | | | |
| 1,000 sq. ft. | | $0.50 | $ 500 | | |
| Total area 1,000 sq. ft. | | | | $ 500 | |
| Improvements | | | | | |
| **Type** | **Size** | **Unit Value** | | | |
| On-site | | Lump sum | $ 500 | | |
| Total improvements | | | | 500 | |
| Damages: | | | | | |
| **Item** | | | | | |
| Nonconforming house & garage | | | $ 6,000 | | |
| Total damages | | | | 6,000 | |
| Subtotal | | | | $ 7,000 | |
| Benefits (subtract): | | | | | |
| **Item** | | | | | |
| None | | | $ 0 | | |
| Total benefits | | | | 0 | |
| Difference between before and after values | | | | | $ 7,000 |

Even in jurisdictions that strongly adhere to the before and after rule, there are generally provisions allowing deviation from the rule under certain circumstances. Such deviation may be necessary when a minimal taking is involved or

when a total before and after appraisal would not be economically practical. The formula applied in these instances is generally: the value of the part taken (as a part of the whole), plus damages to the remainder, less special benefits, equals

**TABLE 3.2 SUMMARY OF CONCLUSIONS**

| | | | | | |
|---|---|---|---|---|---|
| (Accounting tabulation not indicative of appraisal method employed.) | | | | | |
| Indicated value before acquisition: | | | | | |
| Highest and best use: residential | | | | | |
| **Land Area** | | **Unit Value** | | | |
| 30,000 sq. ft. | | $0.50 | $15,000 | | |
| Total area 30,000 sq. ft. | | Total land | | $15,000 | |
| Improvements | | | | | |
| **Type** | **Size** | **Unit Value** | | | |
| Dwelling | 980 sq. ft. | $ 29.39 | $28,800 | | |
| Garage | 280 sq. ft. | $ 4.29 | 1,200 | | |
| On-site | | Lump sum | $ 2,500 | | |
| Total improvements | | | | 32,500 | |
| Total indicated value | | | | | $47,500 |
| Indicated value of remainder: | | | | | |
| Highest and best use: residential | | | | | |
| **Land Area** | | **Unit Value** | | | |
| 29,000 sq. ft. | | $0.75 | $21,750 | | |
| Total area 29,000 sq. ft. | | Total land | | $21,750 | |
| Improvements | | | | | |
| **Type** | **Size** | **Unit Value** | | | |
| Dwelling | 980 sq. ft. | $23.51 | $23,040 | | |
| Garage | 280 sq. ft. | $ 3.43 | 960 | | |
| On-site | | Lump sum | 2,000 | | |
| Total improvements | | | | 26,000 | |
| Total indicated value | | | | | 47,750 |
| Breakdown of acquisition: | | | | | |
| **Land Area** | | **Unit Value** | | | |
| 1,000 sq. ft. | | $0.50 | $ 500 | | |
| Total area 1,000 sq. ft. | | | | $ 500 | |
| Improvements | | | | | |
| **Type** | **Size** | **Unit Value** | | | |
| On-site | | Lump sum | 500 | | |
| Total improvements | | | | 500 | |
| Damages: | | | | | |
| **Item** | | | | | |
| Nonconforming house & garage | | | $ 6,000 | | |
| Total damages | | | | 6,000 | |
| Subtotal | | | | $ 7,000 | |
| Benefits (subtract): | | | | | |
| **Item** | | | | | |
| Improved drainage (29,000 sq. ft. @ $0.25) | | | $ 7,250 | | |
| Total benefits | | | | 7,250 | |
| Difference between before and after values | | | | | $ 0 |

difference in value (just compensation). Graphically, this can be shown as:

| | |
|---|---|
| Value of taking (as part of whole) | $ ________ |
| Plus damages | + ________ |
| Less special benefits | – ________ |
| Difference (just compensation) | $ ________ |

As stated in the *Uniform Appraisal Standards for Federal Land Acquisitions*:

> Another approach [besides the before and after approach] is to find the value of the part taken on the date of taking; and to add to or subtract from that figure an allowance for diminution or enhancement in value of the remainder. This method may or may not be more complicated. It usually is more subject to error, however, and is more apt to result in duplication.
>
> It should be borne in mind that there are situations in which insistence upon strict adherence to the "before-and-after" rule would impose costly and sometimes nearly impossible burdens upon the appraisers and the courts. Examples of such situations, in which the...method discussed above would generally be applicable, are minor easement takings (for flowage, roads, pipelines, transmissions lines, etc.) from large ranches, industrial complexes, etc., where the cost of valuing the whole unit before and after the taking is simply unwarranted in view of the minor easement being acquired.
>
> In short, where its application would be logical, practical, and capable of understanding, the 'before and after' method of determining compensation in partial taking cases is preferred. Fortunately, this method is generally applicable and it is the exceptional case where the cost of valuing the whole is unreasonable.[7]

The alternative approach, sometimes called a *strip appraisal*, is seldom used to appraise a property that may be subject to damages and/or special benefits due to the proposed acquisition.

Although the before and after rule is also known as the *federal rule*, the rule is not even applied universally in federal acquisitions. Only the 5th Circuit Court of Appeals of the United States has definitively ruled that the before and after rule is the only acceptable rule to be used in determining just compensation.[8] The 4th Circuit Court has ruled that estimating the value of the taking plus damages is an acceptable method of determining just compensation in federal eminent domain actions,[9] not to the exclusion of the before and after rule, but as an alternative to it. The balance of the federal circuits appear to prefer the before and after rule, but they have not ruled, as a matter of law, that other methods are inadmissible.

As noted earlier, strip appraisals are most often used in nominal taking cases in which the remainder property is neither damaged nor benefitted by the government's project. Many condemning agencies have provisions for abbreviated value estimates when the anticipated compensation is below a certain dollar amount.[10] Such reports are not generally detailed enough for trial purposes, so it

7. *Uniform Appraisal Standards for Federal Land Acquisitions*, §A-11, 34–35.

8. *United States v. 8.41 Acres*, 680 F.2d 388, 392 n. 5 (5th Cir. 1982).

9. *United States v. 97.19 Acres*, 582 F.2d 878, 883 (4th Cir. 1977).

10. For example, the Federal Highway Administration provides for a "low value appraisal waiver" ($2,500 or less), a "value finding appraisal" ($5,000 or less), and a "short form appraisal," in addition to a narrative "detailed appraisal." U.S. Department of Transportation, Federal Highway Administration, *The Appraisal Guide* (Washington, D.C.: U.S. Government Printing Office, 1990).

is often necessary for an appraiser to convert a strip appraisal into a complete before and after appraisal prior to trial.

Regardless of the reporting requirements, it is generally advisable for appraisers to break down their value estimates in a manner similar to that shown in Tables 3.1 and 3.2. Such a breakdown allows for easier and more accurate comparative analysis of the appraised property and comparable properties and will often reveal any flaw in the logic the appraiser applied in reaching the value estimates. If the appraiser's analysis is flawed, it is much more comfortable for the appraiser to discover it in the privacy of his or her own office than on the witness stand under cross-examination.

## STATE RULE

The state rule requires more in-depth analysis than the before and after rule. The nine procedural steps followed in applying the state rule are:

| | | |
|---|---|---|
| 1. Value before taking | $ | ______ |
| 2. Value of part taken (as part of whole) | − | ______ |
| 3. Remainder value before taking | = $ | ______ |
| 4. Remainder value after taking | − | ______ |
| 5. Damages to remainder | = $ | ______ |
| 6. Special benefits to remainder | − | ______ |
| 7. Net damage to remainder | = $ | ______ |
| 8. Value of part taken (as part of whole) | + | ______ |
| 9. Total difference (just compensation) | = $ | ______ |

The results of the computations made in Step 5 (damages) and Step 7 (net damages) cannot be less than zero. It should be noted that Steps 3, 5, 7, and 9 are *not* estimates of value; they are merely intermediate mathematical calculations.[11]

Step 1 (value before taking) is the same as the first step in applying the before and after rule. In Step 2 the appraiser estimates the *contributory* value of the property within the area of the taking. This contributory value may be greater or less than its pro rata value, depending on the physical characteristics and utility of the part to be taken, as compared to the property as a whole.

Step 4 is an estimate of the value of the remainder property, considering damages and special benefits to the remainder property by reason of the taking and construction of the public improvement. This is the same value estimated in the second step of the before and after rule. Step 6 is an estimate of the special benefits accruing to the remainder property due to the taking and construction of the public improvement.[12] Step 8 is merely a *carry-down*, a repetition of the estimate made in Step 2.

Returning to the example presented earlier, the state formula is applied to the circumstances described as Premise 1. The calculations follow.

11. Step 3 = Step 1 − Step 2; Step 5 = Step 3 − Step 4; Step 7 = Step 5 − Step 6; Step 9 = Step 7 + Step 8.

12. Note that the state formula does not specifically require an estimate of the value of the remainder excluding benefits. However, the appraiser would be unable to complete Step 6 (special benefits to remainder) without such an estimate.

| | |
|---|---|
| 1. Value before taking | $47,500 |
| 2. Value of part taken (as part of whole) | − 1,000 * |
| 3. Remainder value before taking | = $46,500 |
| 4. Remainder value after taking | −40,500 † |
| 5. Damages to remainder | $ 6,000 |
| 6. Special benefits to remainder | − 0 |
| 7. Net damage to remainder | = $ 6,000 |
| 8. Value of part taken (as part of whole) | + 1,000 |
| 9. Total difference (just compensation) | = $ 7,000 |

* 1,000 sq. ft. of land @ $0.50 ($500) + on-site improvements.

† 29,000 sq. ft. of land @ $0.50 ($14,500) + the value of the dwelling ($28,800) and garage ($1,200) discounted 20% ($6,000) for damage + on-site improvement value ($2,000).

Under Premise 2 the computations would be:

| | |
|---|---|
| 1. Value before taking | $ 47,500 |
| 2. Value of part taken (as part of whole) | − 1,000 |
| 3. Remainder value before taking | = $46,500 |
| 4. Remainder value after taking | − 47,750 * |
| 5. Damages to remainder | = $ 0 |
| 6. Special benefits to remainder | − 7,250 † |
| 7. Net damage to remainder | = $ 0 |
| 8. Value of part taken (as part of whole) | + 1,000 |
| 9. Total difference (just compensation) | = $ 1,000 |

* 29,000 sq. ft. of land @ $0.75 ($21,750) + the value of the dwelling ($28,800) and garage ($1,200) discounted by 20% ($6,000) + on-site improvements ($2,000).

† 29,000 sq. ft. of land @ $0.25.

Note. The amounts shown in Steps 5 and 7 cannot be less than zero.

There are a number of variations on this formula. In a few jurisdictions, the basic state rule must be modified because the jurisdiction does not allow benefits to be offset against the value of the taking or damages to the remainder. This modified formula eliminates Steps 6 and 7 from the basic state formula, as shown below:

| | |
|---|---|
| 1. Value before taking | $ ________ |
| 2. Value of part taken (as part of whole) | − ________ |
| 3. Remainder value before taking | = $ ________ |
| 4. Remainder value after taking (before benefits) | − ________ |
| 5. Damages to remainder | = $ ________ |
| 6. Value of part taken (as part of whole) | + ________ |
| 7. Total difference (just compensation) | = $ ________ |

When this formula is used, the amount shown in Step 4 (remainder value after taking) is always the value of the remainder *excluding* consideration of any benefits.

Applying this formula to the sample property under Premise 1 results in the following calculations:

| | |
|---|---|
| 1. Value before taking | $47,500 |
| 2. Value of part taken (as part of whole) | - 1,000 |
| 3. Remainder value before taking | = $46,500 |
| 4. Remainder value after taking (before benefits) | -40,500 |
| 5. Damages to remainder | = $ 6,000 |
| 6. Value of part taken (as part of whole) | + 1,000 |
| 7. Total difference (just compensation) | = $ 7,000 |

Under Premise 2, the computations are:

| | |
|---|---|
| 1. Value before taking | $47,500 |
| 2. Value of part taken (as part of whole) | - 1,000 |
| 3. Remainder value before taking | = $46,500 |
| 4. Remainder value after taking (before benefits) | -40,500 |
| 5. Damages to remainder | = $ 6,000 |
| 6. Value of part taken (as part of whole) | + 1,000 |
| 7. Total difference (just compensation) | = $ 7,000 |

When this formula is applied the results under Premise 1 and Premise 2 are identical. In the standard formula, Step 5 (damages) can never be less than zero; under this modified rule, Step 4 (remainder value after taking) can never be greater than Step 3 (remainder value before taking) because the appraiser is prohibited from considering any benefits in estimating the value of the remainder after the taking. Thus it is impossible for the value of the remainder after the taking to be greater than the remainder value before the taking.

Many of these rules of compensation have been developed to avoid a chronic and dangerous problem—*double damage*, i.e., the duplication of just compensation. To illustrate how easy it is to double damage using the taking plus damages (state) rule, consider the situation depicted in Figure 3.2. Assume that the property's annual economic rent prior to the taking is $20,000 net to the lessor, and the applicable overall capitalization rate is 10.5%. The indicated before value is therefore $190,500 ($20,000/0.105), rounded. Market evidence indicates that the land has a value of $10 per square foot, or $60,000. Thus, the before value can be allocated as follows for analytical purposes:

| | |
|---|---|
| Land | $ 60,000 |
| Improvements | 130,500 |
| Total | $190,500 |

Now, assume that the municipality takes a 10-ft. strip from the westerly side of the property, which eliminates five parking stalls. Analysis indicates that the economic rent after the taking is $15,000 per year. Under the state, or taking plus damages, rule the uninitiated appraiser might make the following calculations:

**FIGURE 3.2 PLOT PLAN—PARTIAL TAKING**




| | |
|---|---|
| Area before taking | 6,000 sq. ft. |
| Area after taking | 5,500 sq. ft. |
| Area of taking | 500 sq. ft. |

| | |
|---|---|
| Value of taking (500 sq. ft. @ $10.00) | $ 5,000 |
| Damages ($5,000 rent loss ÷ 0.105) | 47,619 |
| Total difference (just compensation) | $52,619 |
| Rounded | $52,500 |

When this procedure is applied, the landowner is compensated for the taking twice. Use of the correct state rule formula would result in the following:

| | |
|---|---|
| 1. Value before taking | $190,500 |
| 2. Value of part taken (500 sq. ft. @ $10.00) | − 5,000 |
| 3. Remainder value before taking | = $185,500 |
| 4. Remainder value after taking ($15,000 income ÷ 0.105) | − 142,857 |
| 5. Damages to remainder | = $ 42,643 |
| 6. Special benefits to remainder | − 0 |
| 7. Net damage to remainder | = $ 42,643 |
| 8. Value of part taken (as part of whole) | + 5,000 |
| 9. Total difference (just compensation) | = $ 47,643 |
| Rounded | $ 47,500 |

Comparison of these calculations illustrates the importance of following a set formula when using the state rule. The courts are plagued with appraisals in which damage to the property is doubled when the state rule is applied.

When applying the state rule, the part taken generally is valued as a part of the whole property prior to the taking.[13] There have been court rulings that conflict with this position, however. If the part taken has an independent economic use and its market value as a separate entity is greater than its value as a part of the whole, it has been held proper to value the part taken as a separate tract, not

13. *Department of Public Works and Bldngs. v. Oberlaender*, 235 N.E.2d 3 (Ill. 1969).

as a part of the whole.[14] There is a considerable amount of case law on this point. Analysis of this case law clearly illustrates that these conflicting rulings are not due to differing constitutional and/or statutory provisions in the various jurisdictions. Rather, they result from insufficient or improper analysis on the part of the appraiser in arriving at a conclusion of highest and best use and/or a determination of the *larger parcel*. (See Chapters 5 and 6 for information on highest and best use and determination of the larger parcel.)

If, as the court rulings assert, the part taken has an independent economic use and its market value as a separate entity is greater than its value as a part of the whole, the appraiser must have erred in determining the larger parcel and/or highest and best use because the area taken and the remainder parcel had no unity of highest and best use prior to the taking. Therefore, the larger parcel to be appraised in the before situation is the taken area itself, and there is no after situation because the taking was, in effect, a *total taking* of the larger parcel.

This situation is illustrated in a Louisiana decision in which the court said the following:

> A landowner is always entitled to the fair market value of the land actually taken.
>
> The fair market value of the front land in certain situations is higher than the average unit price of the tract. The fact that adjacent areas of land which have different highest and best uses are all under the same ownership, and together compose a large ownership tract, does not presuppose that they would be developed or marketed as a single tract. In fact, market realities dictate otherwise. An owner ordinarily will sell a portion of his property for the highest price the market will deliver so long as that use does not damage the value of the remainder. This jurisdiction has long recognized that different portions of an ownership tract may have different highest and best uses and, thus, different per unit values.[15]

When appraising property for partial taking purposes, an appraiser must often make more in-depth value estimates than would be called for by other types of appraisal assignments. In a typical appraisal assignment, the appraiser's only concern is the market value of the property as a whole. The contributory value of the components that make up the whole are of no concern. However, when valuing a part taken as a part of the whole, the appraiser must carefully determine whether the area taken contributes an equal pro rata value to the whole or an amount greater or less than its pro rata value. The courts have ruled that it is improper to use an average unit value (e.g., per square foot, per acre) as developed for the whole tract in valuing the part taken unless each unit in the tract has the same value.[16] As one court applying the state rule of measuring compensation put it:

> The landowner is thus to be awarded the actual market value of the particular portion of the property taken, valued according to its highest and best use. He is

14. *People ex rel. Dept. of Pub. Works v. Corp. of Pres. of Church of Latter Day Saints*, 91 Cal. Rptr. 532,537 (Cal. 1970).

15. *State Dept. of H'wys. v. Stegemann, La.*, 269 So.2d 480 (La. 1973).

16. *Los Angeles County Flood Control Dist. v. McNulty*, 379 P.2d 493 (Cal. 1963).

not limited to its average per acre value as a pro rata portion of the parent tract where the front portion has a different highest and best value.

...[W]here the evidence shows that the front portion of the tract taken has a higher value than the rear portion not taken, the landowner must be awarded the higher value for the land actually taken rather than an average value based on its proportionate portion of the land-area of the parent tract.[17] [Citations omitted]

## AN EXAMPLE

Considerable case law has developed over the use of a valuation procedure variously referred to as the *backland theory*, the *slide back theory*, or the *front land-rear land concept*. Figures 3.3 and 3.4 illustrate a situation in which this theory might be applicable.

**FIGURE 3.3 PLOT PLAN—BEFORE PARTIAL TAKING**




Assume that market evidence indicates that the highest and best use of the property shown in Figure 3.3 is for commercial development. Analysis indicates that tracts 200 feet wide and 200 feet deep can be sold for $4.00 per square foot, or $160,000, on the open market; a tract 200 feet wide and 400 feet deep will bring a price of $200,000. It can be assumed then that the front 200 feet of the tract has a value of $4.00 per square foot, while the land beyond 200 feet has a value of $1.00 per square foot. As shown in Figure 3.4, the front 40 feet of the tract will be acquired for road widening. Two diametrically opposed approaches to such a situation have been developed by the courts in two jurisdictions using the state (taking plus damages) rule. These two different approaches are exemplified by a California case and a Louisiana case.

The California court cited *City of Los Angeles v. Allen*[18] and stated:

17. *State, through Department of Highways v. Hoyt, La.*, 284 So.2d 763, 764 (La. 1973).

18. *City of Los Angeles v. Allen*, 36 P.2d 611 (Cal. 1934).

**FIGURE 3.4 PLOT PLAN—AFTER PARTIAL TAKING**




| | |
|---|---|
| Area before taking | 80,000 sq. ft. |
| Area after taking | 72,000 sq. ft. |
| Area of taking | 8,000 sq. ft. |

> On appeal, the condemnee contended that the strip taken was frontage and that he should have been allowed the commercial value. The Supreme Court disagreed. It reasoned that if to widen the public highway, a strip of land is taken from a larger parcel under one ownership and if it is clear that the main parcel has more than one theoretical zone of value, not because of any unique characteristic in the land itself, but rather because of the proximity of the theoretical zones to the public highway or similar factors affecting property values, and if it is also clear that the same zones may be immediately reestablished after the "take," the owner is unjustly enriched if he is compensated on the basis of the highest zone of value; under these circumstances, the strip must be treated as an integral part of the whole and not as a separate piece of property having an independent value.[19]

On the other hand, the Louisiana court stated:

> We consider the Louisiana jurisprudence to be settled, therefore, that generally the market value of the particular part of the tract expropriated is determined by the actual market value of the portion taken, and not by its average per acre or per square foot value as a pro rata portion of the parent tract. Also, a landowner is entitled to receive the full and actual market value of highway frontage expropriated for further highway purposes, without deduction therefrom because of the fact that by reason of the taking a new highway frontage will be provided for the formerly rear portions of the parent tract.[20]

19. *City of Fresno v. Cloud*, 102 Cal. Rptr. 874 (Cal. 1972).

20. *State, Dept. of H'ways v. LeDoux*, La., 184 So.2d 604 (La. 1966).

In the *Allen* case cited by the California court, the trial judge used a weighted average in determining just compensation. Applying this procedure to the above circumstances would result in the following computations:

| | |
|---|---|
| 1. Value before taking (40,000 sq. ft. @ $4.00 + 40,000 sq. ft. @ $1.00) | $200,000 |
| 2. Value of taking ($200,000 ÷ 80,000 sq. ft. = $2.50) (8,000 sq. ft. @ $2.50) | – 20,000 |
| 3. Remainder value before taking | $180,000 |
| 4. Remainder value after taking (40,000 sq. ft. @ $4.00 + 32,000 sq. ft. @ $1.00) | –192,000 |
| 5. Damages | $ 0 |
| 6. Special benefits ($192,000 – $180,000)* | – 12,000 |
| 7. Net damages | $ 0 |
| 8. Value of part taken | + 20,000 |
| 9. Total difference (just compensation) | $ 20,000 |

* This benefit is created because 8,000 square feet of land that was worth $1.00 per sq. ft. before the taking will be worth $4.00 per sq. ft. after the taking because it will front the widened roadway.

Under the Louisiana rule, just compensation would be calculated as follows:

| | |
|---|---|
| 1. Value before taking (40,000 sq. ft. @ $4.00 + 40,000 sq. ft. @ $1.00) | $200,000 |
| 2. Value of taking (8,000 sq. ft. @ $4.00) | – 32,000 |
| 3. Remainder value before taking | $168,000 |
| 4. Remainder value after taking (40,000 sq. ft. @ $4.00 + 32,000 sq. ft. @ $1.00) | –192,000 |
| 5. Damages | $ 0 |
| 6. Special benefits | 0 |
| 7. Net damages | $ 0 |
| 8. Value of part taken | + 32,000 |
| 9. Total difference (just compensation) | $ 32,000 |

Applying the before and after rule, compensation would be:

| | |
|---|---|
| Value before taking (40,000 sq. ft. @ $4.00 + 40,000 sq. ft. @ $1.00) | $200,000 |
| Value after take (40,000 sq. ft. @ $4.00 + 32,000 sq. ft. @ $1.00) | –192,000 |
| Total difference (just compensation) | $ 8,000 |

The U.S. Supreme Court has justified use of the before and after rule by explaining its logic as follows:

> If, for example, by the widening of a street, the part which lies next [to] the street, being the most valuable part of the land, is taken for the public use, and what was before in the rear becomes the front part, and upon a wider street, and thereby of greater value than the whole was before, it is neither just in itself, nor required by the Constitution, that the owner should be entitled both to receive the full value

> of the part taken, considered as front land, and to retain the increase in value of the back land, which has been made front land by the same taking.[21]

The differing rulings may be caused as much by confusion on the part of the courts as by differences in constitutions and their construction. Nevertheless, these differences are understandable when it is recognized that just compensation is defined as "[T]he full monetary equivalent of the property taken [and] market value at time of taking"..., but the same definition states that just compensation

> requires that the owner be put in as good position pecuniarily as he would otherwise have been if the property had not been taken [and] a settlement which leaves one no poorer or richer than he was before the property was taken.[22]

The Louisiana rule is based on the proposition that if an individual wanted to acquire 8,000 square feet of frontage out of the parcel depicted in Figure 3.3, he or she would have to pay $4.00 per square foot, or $32,000, for it. Thus, it can be argued that the state should pay the same amount. It is the monetary equivalent of the property taken—i.e., the land's market value.

However, the Louisiana ruling certainly leaves the property owner in a far better position pecuniarily than if the property had not been taken. Prior to the taking, the owner had a tract of land that could have been sold for $200,000. After the taking, the owner had $32,000 in cash plus a tract of land that could have been sold for $192,000, for a total of $224,000. It would appear that the before and after rule would more closely approximate just compensation from the standpoint of placing the owner in the same, but no better, position pecuniarily that he was in prior to the taking.

Although either of these positions, or rules of compensation, could legitimately be argued, it is not the appraiser's job to argue them, but rather to apply them. Comparing the results of these computations highlights the need for appraisers to be fully familiar with the rules of eminent domain valuation applicable in the jurisdiction.

All that can be said about the California ruling in the *Allen* case is that it is wrong whatever rule of compensation, or for that matter appraisal theory, is applied to it. However, given other California rulings in the field of eminent domain, particularly in the area of inverse condemnation, the ruling is not surprising. (For more on inverse condemnation, see Chapter 17.)

*Nichols'* explains that concepts such as the slide back theory had to be created to avoid the errors of percentage valuation, the technique applied in the *Allen* case. *Nichols'* goes on to explain:

> Under this theory, the pre-taking parcel is divided into zones of value from the point of moving backward through the property to its rear-most point from the point of take. Thus the value of the portion taken, even as a part of the whole, is considered only in its value zone. This kind of scientific analysis of market conditions is not representative of what occurs in the market and begins to drift so far

21. *Bauman v. Ross*, 167 U.S. 548, 574–575 (1897).

22. *Black's Law Dictionary*, abr. 6th ed., s.v. "just compensation."

> away from reality to be an exercise in abstract philosophy rather than attainment of damage value.

*Nichols'* concludes:

> Many courts have avoided this problem [of applying the slide back theory] by actually defining a portion of the property, even though contiguous and uniformly held by the condemnee pre-taking as a separate and distinct parcel. Such definition eliminates any applicability of damage to that part of the owner's property remaining, which was not a part of the separate use parcel pre-taking. In applying the "before and after rule" however, the same result is readily attained since the property not effected (sic) by the taking would have essentially the same value both before and after and thus produce no differential in the final ascertainment of damage.[23]

This conclusion is incorrect. Consider the property depicted in Figure 3.3. If the westerly 200 feet of the tract did not have the same, or a unified, highest and best use as the easterly portion of the tract, the easterly portion of the tract should have been excluded from consideration in both the before and after appraisals, irrespective of whether the state rule or the before and after rule was applicable. If the two tracts of land had no unity of use, the easterly portion of the tract would not be a part of the larger parcel. It could be argued, however, that the larger parcel would include the westerly 200 feet of the remainder ownership in the after situation. (See Chapter 5 for related discussion.) With no unity of use, the compensation would be the same ($4.00 per square foot, or $32,000), regardless of whether the state or before and after rule was applied.

On the other hand, if there was unity of highest and best use within the entire ownership, the results would have varied considerably. As the earlier computations demonstrated, if the westerly 200 feet of the tract was considered a separate and distinct parcel under the state rule the compensation would be $4.00 per square foot, or $32,000. However, the premise in *Nichols'* that "the property not affected by the taking would have essentially the same value both before and after and thus produce no differential in the final ascertainment of damage" is flawed. A portion of the remainder is, in fact, affected by the taking; it is specially benefitted. Because the roadway is reconstructed 40 feet east of its former location, the zone worth $4.00 per square foot also shifts 40 feet to the east, reducing the depth of the $1.00 per square foot land to 160 feet (see Figure 3.4). It is for this reason that the before and after rule results in an indicated compensation of $8,000.

*Nichols'* analysis demonstrates once again the confusion that exists concerning the effect, and the importance, of the correct determination of the larger parcel. This issue is discussed in detail in Chapter 5.

---

23. *Nichols'*, vol. 4A, §14.02[2] (1992).

## COMPARISON OF RULES

The two rules of computing just compensation have evolved because judicial attitudes differ as to whether the benefits created by a project can be offset against the value of the taking and/or any damages caused by the taking. (The rules relating to benefits are covered at length in Chapter 15.) Generally jurisdictions that use the state rule do not allow benefits to be offset against the value of the part taken. Some, in fact, will not allow a project benefit to be set off against either the part taken or the damages caused by the taking. The before and after rule is generally applied in jurisdictions that allow benefits to be offset against both the value of the taking and the damages.

Experience suggests that condemning agencies in some jurisdictions do not know which rule to use. Their appraisal reporting requirements are a hybrid, requiring the appraiser to estimate the before and after values of the property under appraisal and then to break down the value using the state rule. Confusion in these jurisdictions results from the fact that state courts require the state rule to be used in eminent domain cases, but federal matching funds for state projects are awarded based on the federal measure of just compensation. This has caused many state agencies to attempt to acquire property using the before and after rule, even though they know that the state rule will apply if the parcel must be condemned.[24]

The rule of compensation used in each state is indicated in the following list compiled by George Schmutz:[25]

**Before and After (Federal) Rule**

| | | |
|---|---|---|
| Alabama | Minnesota | Pennsylvania |
| Arkansas | Mississippi | Rhode Island |
| Connecticut | Missouri | South Dakota |
| Delaware | North Carolina | Tennessee |
| Hawaii | New Hampshire | Virginia |
| Iowa | New Jersey | Washington |
| Maine | New Mexico | Wisconsin |
| Maryland | Ohio | Wyoming |
| Michigan | Oklahoma | |

**Taking Plus Damages (State) Rule**

| | | |
|---|---|---|
| Arizona | Kansas | North Dakota |
| California | Kentucky | Oregon |
| Colorado | Louisiana | South Carolina |
| Florida | Massachusetts | Texas |
| Georgia | Montana | Utah |
| Idaho | Nebraska | Virginia |
| Illinois | Nevada | Vermont |
| Indiana | New York | West Virginia |

24. Appraisers must be cautious in these jurisdictions to ensure that they will be able to sign a required statement that the property was valued in accordance with applicable state law. See Chapter 1, "The Litigation Environment."

25. George L. Schmutz, *Condemnation Appraisal Handbook*, rev., Edwin M. Rams, ed. (Englewood Cliffs, N.J.: Prentice-Hall, 1963), 97–98.

**Both Rules Held Acceptable**

| | | |
|---|---|---|
| Alabama | New York | United States |
| Connecticut | North Carolina | Vermont |
| Mississippi | Rhode Island | Wisconsin |
| New Jersey | | |

The two primary weaknesses of the before and after rule are: 1) It does not provide a mechanism to exclude benefits from the after value. 2) It does not provide a mechanism to exclude noncompensable damages from the after value. (See Chapter 14 for a discussion of damages.) However, most authorities argue that the complexity of the state rule and its potential for double damages are so great that the before and after rule should be adopted despite its perceived weaknesses. Lewis Orgel advocates

> ...the abandonment of the attempt to find the separate value of the part taken, in favor of the rule that recovery should be based on the difference between the value of the whole before-and-after the taking. The adoption by all courts of the latter rule should be far less confusing to a jury and would probably avoid a very practical objection that may be urged against the more popular rule of "value of part taken plus damages to the remainder"—the objection that a jury may include in "damages to the remainder" a part of the very injury which it incorporates in "value of the part taken."[26]

*Nichols'* states

> The before-and-after evaluation approach "is generally the simplest and perhaps the most widely used approach in severance damage determinations. This approach also serves to lessen the problems that arise where a series of factors affecting value are added together to arrive at a total severance damage determination.
>
> ...Under [the part taken plus damages] attempt to evaluate compensation, the trier seeks to value the number of acres in fact taken, including such improvements as they existed in the pre-taking condition as part of an entire tract and then adding to that, those specific, provable damages occasioned to the remainder by the taking, again treating the remainder as it existed prior to the taking, i.e., as part of an entire tract. This results more in sophistry than equity.
>
> The valuation of the part taken plus severance damage has been criticized as tending to allow for duplication of damages and overpayment to the condemnee.[27]
>
> [T]he "before and after rule"...is preferred by most authorities, since it eliminates the difficulty of trying to evaluate a separate piece of land.[28]

The *Model Code on Eminent Domain* provides that

> [j]ust compensation shall consist of the difference between the full market value of the condemnee's entire property interest immediately before condemnation and as unaffected thereby and the full market value of his property interest remaining immediately after such condemnation and as affected thereby ...[29]

26. Lewis Orgel, *Valuation Under the Law of Eminent Domain*, 2d ed. (Charlottesville, Va.: The Michie Co., 1953), vol. 1, §52, 238.

27. *Nichols'*, vol. 4A, §14.02[1] (1992).

28. Ibid., vol. 8A, §16.02[4] (1992).

29. *Model Code on Eminent Domain*, §602.

The *Uniform Eminent Domain Code* provides that

> the measure of compensation is the greater of (1) the value of the property taken...or (2) the amount by which the fair market value of the entire property immediately before the taking exceeds the fair market value of the remainder immediately after the taking.[30]
>
> The principal difference between the rule expressed [above] and the conventional "before and after" approach followed in several states and in federal condemnation practice is that the latter can sometimes result in a zero award (if the remainder after the taking is more valuable than the entire property before the taking), while under the present section, the award cannot be less than the value of the "take."
>
> A different approach, something referred to as the "value plus damage" rule, appears to be followed in one of several variant formulations in a majority of states. Under this rule, briefly stated, compensation in partial taking cases generally consists of the sum of the value of the property taken and of any net damages to the remainder after offsetting benefits. Text writers and commentators, however, are in substantial agreement that the "before and after" rule is preferable to the "value plus damage" approach, since it avoids confusing artificialities inherent in the latter approach, is more consistent with realistic market valuation and appraisal techniques, and reduces the risk of inequitable windfall recoveries by property owners that may unnecessarily increase the cost of public improvements...
>
> The present section takes an intermediate position between these two views, requiring the compensation to be measured by the "before and after" rule, except that the award cannot be less than the value of the "take."[31]

The complexity and confusion that can result when using the state rule is demonstrated by the comments of Judge Hall, who offered a dissenting opinion in a case in which the majority of the court concluded that the lower court had awarded an owner double damages by using the state rule. He said "I am filled with a sense of frustration because of my inability to make my brothers of the majority understand what is so clear to me."[32]

## SUMMARY

Two general rules have been developed to measure just compensation in eminent domain litigation. These rules are the before and after rule, often referred to as the *federal rule*, and the value of the part taken plus damages rule, often referred to as the *state rule*.[33] The federal rule is generally used in jurisdictions that allow benefits created by the public improvement to be set off against the value of the property taken and damages to the remainder land resulting from the taking and construction of the public improvement. The federal rule has two perceived weak-

30. *Uniform Eminent Domain Code*, §1002.

31. Ibid., "Official Comment."

32. *United States v. 2.33 Acres of Land, More or Less*, 704 F.2d 728, 732 (4th Cir. 1983) (dissenting opinion).

33. Referred to in recent editions of *Nichols' on Eminent Domain* as the "severance damage rule."

nesses: there are no procedures inherent in the application of the rule to exclude benefits (for those jurisdictions that do not allow benefits to be set off in the after valuation) or to exclude noncompensable damages in the after value of the property. These perceived weaknesses can be overcome by the appraiser, however, by analyzing the remainder property's value properly, without resorting to the convoluted, complex, and confusing hypothetical valuations required by the state rule. When the federal rule is applied, the after value of the property can be equal to, or greater than, its before value, resulting in zero compensation, if the benefits created are equal to or greater than the aggregate amount of the value of the part taken plus damages.

The state rule is generally used in jurisdictions that do not allow benefits to be set off against the value of the part taken and/or damages. Because the state rule is more hypothetical and complex than the federal rule, there is considerable danger that the unwary appraiser, or jury, could double the damages to the property and compensate the owner twice for the taking—once for the value of the taking and again for damages to the remainder. Because of this potential for double damaging, it is essential that the appraiser use a standard formula in making the value computations. Applying the state rule will never result in a difference in value (i.e., just compensation) that is less than the value of the part taken.

There is a considerable amount of conflicting case law with regard to whether the value of the part taken should be valued as a part of the whole property or as a separate entity. If the appraiser carefully analyzes the highest and best use of the property and properly identifies the larger parcel, most inconsistencies can be alleviated.

"Although the two methods differ, it is important to note that, in any given case, if both methods are applied correctly, they will yield the same result"[34] if benefits do not exceed damages. The appraiser must know which rule is applicable in the jurisdiction where a trial on the condemned property may be held. Using the wrong rule will often result in rejection of the appraiser's report and/or appraisal testimony. It is also essential that the appraiser investigate the applicable rule in the jurisdiction to determine whether the rule has been modified from the standard rule applicable in other jurisdictions.

Regardless of the rule applied, the appraiser must guard against double damages and errors in logic by allocating all value estimates systematically (see Tables 3.1 and 3.2). If the figures in the allocation will not balance, the appraiser's analysis is in error and must be corrected.

Although most authorities consider the before and after rule the preferred methodology, case law favoring the taking plus damages rule is so strong in some jurisdictions that nothing short of legislation will alter it (assuming such legislation would not be ruled unconstitutional).

34. *United States v. 2.33 Acres of Land, More or Less*, 704 F.2d 728, 732 (4th Cir. 1983) (dissenting opinion).